UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| RICKY L. GRIGGS, | ) | |
|         Petitioner, | ) | |
| | ) | No. 16 CV 9299 |
| v. | ) | Judge Iain D. Johnston |
| | ) | |
| JASON GARNETT,[1] | ) | |
|         Respondent. | ) | |

**MEMORANDUM OPINION AND ORDER**

Petitioner Ricky Griggs is currently on parole following his 2012 conviction for burglary and possession of another's credit card, for which he was sentenced to 20 years' incarceration. Mr. Griggs has petitioned this Court for a writ of habeas corpus under 28 U.S.C. § 2254. For the reasons given below, the Court denies the petition for a writ of habeas corpus and declines to issue a certificate of appealability.

**BACKGROUND**

The Court presumes the correctness of the state court's factual findings, including the facts set forth in the state appellate court's opinion on Mr. Grigg's direct appeal, in the absence of clear and convincing evidence to the contrary presented by Mr. Griggs. *See* 28 U.S.C. § 2254(e)(1); *Hartsfield v. Dorethy*, 949 F.3d 307, 309 n.1 (7th Cir. 2020). The following are the facts as set forth in the state appellate court's opinion. *People of the State of Ill. v. Griggs*, 2015 IL App (2d) 130299-U (Ill. App. Ct. Mar. 26, 2015).

Mr. Griggs was indicted on two counts stemming from an incident that occurred during the evening of December 6, 2011: one count of burglary to a motor vehicle, and one count of possession of another's credit or debit card. He was originally represented by counsel, but eventually decided to proceed *pro se*. At trial, Ryan Steig testified that on the evening of December 6, 2011, he parked his car in a shopping center lot in Rockford, Illinois, to exercise at Anytime Fitness. When he finished and returned to his car, he found the driver's side window shattered and his wallet missing. He also found part of a knife near his car. He called Wells Fargo bank to cancel his credit card, but learned it had just been used at the nearby Phillips 66 gas station on Perryville Road.

Rockford police officer Katherine McLuckie testified that on that same evening, she responded to a call from a Mobil gas station about a suspicious person who tried to purchase

---

[1] Mr. Griggs was paroled on July 9, 2021. See https://www2.illinois.gov/idoc/Offender/Pages/InmateSearch.aspx (last visited 12/20/2021). Parole satisfies the "in custody" requirement of 28 U.S.C. § 2254(a). *See Jones v. Cunningham*, 371 U.S. 236, 242 (1963). The Court substitutes for the proper respondent, *see* Fed. R. Civ. P. 25(d), who for Mr. Griggs is the official in charge of the parole agency, *see* Rule 2 of the Rules Governing Section 2254 Cases, Advisory Committee Notes.

alcohol with a credit card, but refused to show identification.  The Mobil clerk, Lee Nygre, testified that after the suspicious person left, she found blood on the counter, floor, and front door, though she cleaned the blood on the counter with a bleach solution before officer McLuckie arrived.  Ms. Nygre was not sure that the blood was left behind by the suspicious person.  When shown surveillance video at trial depicting a person attempting to purchase alcohol with a credit card the evening of the incident, Ms. Nygre identified Mr. Griggs as the suspicious person she had reported to police.

Officer McLuckie testified that while on her way to the Mobil gas station, she had also received a report of the burglary to the car parked by Anytime Fitness.  When she left the Mobil station, she proceeded to the parking lot by Anytime Fitness and spoke to Mr. Steig.  She photographed the damage to his car and the knife on the ground.  She did not take any fingerprints from the car and did not observe any blood on or around it.  When Mr. Steig told her that his credit card had been taken and someone used it at the nearby Phillips 66 gas station, she sent another police officer there to collect evidence.

The clerk at the Phillips 66 gas station was Matthew Colburn.  He testified at trial that he knew Mr. Griggs to be a regular customer, that he was at the Phillips 66 station twice on December 6, 2011, that he purchased a cigar with some change during the first visit, and that he returned to the store later that day to buy a case of Heineken beer and two boxes of Black & Mild cigars using a credit card.  Mr. Colburn found it unusual that Mr. Griggs used a credit card because he had never used a credit card before December 6.  Mr. Colburn testified that company policy did not require him to check Mr. Grigg's ID because he knew him to be over 27 and the transaction was for less than $50, so Mr. Colburn did not ask for ID.  When shown surveillance video at trial from the night of December 6-7, 2011, Mr. Colburn identified Mr. Griggs in the video and testified that the video accurately depicted Mr. Griggs' December 6, 2011, use of the credit card to buy beer and cigars.  A copy of the credit card sales receipt from that transaction was admitted into evidence.  It did not include the name of the cardholder, Mr. Steig, but did identify Mr. Colburn as the employee who completed the transaction.  Mr. Steig did not recognize the signature on the receipt.  The store manager testified that he used the time stamp on the sales receipt, 10:31pm, to find the portion of the surveillance video from December 6, 2011, depicting Mr. Griggs' purchase.

When Mr. Griggs returned to the Phillips 66 gas station on December 12, 2011, Mr. Colburn called 911 to report him.  Officer Daniel Flick responded, spoke to Mr. Griggs, and testified that Mr. Griggs told him his name was "Jeffrey Lockwood."  He found Black & Mild cigars on Mr. Griggs.  Two other officers interviewed Mr. Griggs.  During the interview, Mr. Griggs denied using a credit card to buy the beer and cigars at the Phillips 66 gas station and claimed he had used cash to buy them.

During the trial jurors heard testimony about a similar crime that happened a few nights after the December 6, 2011, incident.  Jean Houzenga testified that she and her husband dined at Franchesco's restaurant the evening of December 10, 2011, and when her husband retrieved their car around 8:00 or 9:00 that evening, he found the driver's side window smashed.  Ms. Houzenga had left her purse and wallet in the car, but both were missing.  When she called Discover to report that her credit card had been taken, she learned that the card had been used at

the Phillips 66 station to buy Heineken beer and Black & Mild cigars. She denied making the purchase. Detective Jeff Stovall was assigned to investigate the December 10, 2011, burglary. He reviewed surveillance footage from the Phillips 66 station the evening of December 10, 2011, and noted that the person who used a credit card to buy Heineken beer and Black & Mild cigars was the same person depicted in the footage from December 6, 2011, at both the Mobil and Phillips 66 stations. He also obtained the credit card sales receipt from the transaction. It contained Ms. Houzenga's printed name, but she did not recognize the signature on the receipt.

Stovall testified that he and another detective interviewed the defendant again on December 16, 2011. Mr. Griggs denied using a credit card during the December 6, 2011, incident, but mentioned that he had never been asked for his ID during the purchase. When told he was being investigated for two burglaries, he responded that he was being accused of using a lady's credit card and stealing her purse, but the detectives had never mentioned that one of the victims was a woman or that her purse had been stolen. Mr. Griggs then stated that he was neither agreeing nor denying that he used any credit cards, but that if he had it would have been cards he found on the street.

The State was unable to recover enough DNA from the knife found near Mr. Steig's car after the December 6, 2011, incident to attempt to compare it to a DNA sample obtained from Mr. Griggs.

The jury found Mr. Griggs guilty of both burglary to a vehicle and possession of another's credit card. The judge sentenced him to 20 years' imprisonment for the burglary to be served concurrently with a sentence of 6 years for possession of another's credit card.

According to Mr. Griggs' petition, he received appointed counsel for his direct appeal, but appointed counsel refused to raise certain arguments, and as a result Mr. Griggs proceeded *pro se*. On direct appeal he argued that (1) the evidence was insufficient, (2) he was denied a speedy trial, (3) other-crimes evidence of the December 10, 2011, burglary was improperly admitted, and (4) the surveillance video, knife blade, and the December 6, 2011, sales receipt were improperly admitted. Dkt. 62, Ex. D (Opening Brief); Dkt. 62, Ex. E (Reply Brief). The appellate court affirmed, finding that his first three issues were meritless, and that he had waived the rest by failing to present any supporting argument in his opening appellate brief, and instead first argued the issues in his reply brief. *See Griggs*, 2015 IL App (2d) 130299-U (Ill. App. Ct. Mar. 26, 2015). Mr. Griggs then filed a petition for leave to appeal to the Illinois Supreme Court, raising his sufficiency of the evidence, speedy trial, and other crimes evidence arguments, as well as an argument that he was denied effective assistance of counsel on direct appeal because he was forced to choose between abandoning issues and proceeding *pro se*. Dkt. 62, Ex. H. The Illinois Supreme Court denied his petition for leave to appeal. Dkt. 62, Ex. I.

Mr. Griggs then filed a *pro se* post-conviction petition in the trial court arguing, as pertinent here, that (1) trial counsel was ineffective for failing to object to a motion to compel a DNA sample, which delayed his trial in violation of the Illinois Speedy Trial Act, (2) the evidence was insufficient, (3) other-crimes evidence was improperly admitted, (4) the surveillance video, knife blade, and sales receipt were improperly admitted, and (5) he did not receive a fair trial or impartial jury because the judge knew one of the jurors. Dkt. 62, Ex. J.

The judge dismissed the post-conviction as "frivolous and patently without merit." Dkt. 62, Ex. K. Mr. Griggs obtained appointed counsel to appeal the denial of his post-conviction petition, but appointed counsel moved to withdraw, arguing there were no non-frivolous arguments to pursue. Dkt. 62, Ex. M. The appellate court granted counsel's motion to withdraw and affirmed the denial of the post-conviction petition. Dkt. 62, Ex. L. The appellate court found that many of the issues raised in Mr. Griggs' petition were procedurally barred either because they had already been addressed on direct appeal, such as his arguments about a speedy trial, other-crimes evidence, the admission of the video, knife and sales receipt, or because he failed to raise them on direct appeal, such as his argument that he was denied a fair trial because the trial judge knew a juror. It also noted that he had raised one argument on appeal that he had not raised in his post-conviction petition—that counsel assigned to him for his direct appeal was ineffective for refusing to raise the arguments Mr. Griggs wanted. The appellate court found that the argument was waived because he did not raise it in his post-conviction petition. The Illinois Supreme Court denied his petition for leave to appeal. Dkt. 62, Ex. R.

## ANALYSIS

A federal district court may grant habeas relief to a state prisoner only if the state court's adjudication of the prisoner's claims either (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," *see* 28 U.S.C. § 2254(d)(1), or (2) the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *see* 28 U.S.C. § 2254(d)(2).

To obtain habeas relief under 28 U.S.C. § 2254, a state inmate must first fully exhaust state court remedies. *See* 28 U.S.C. § 2254(b)(1)(A). The duty to exhaust includes the duty to provide a state court with a fair opportunity to "pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (internal quotation marks and citations omitted). Fair presentment also requires the petitioner to "assert his federal claim through one complete round of state court review, either on direct review or in post-conviction proceedings." *McGhee v. Watson*, 900 F.3d 849, 854 (7th Cir. 2018). "This means that the petitioner must raise the issue at each and every level in the state court system, including levels at which review is discretionary rather than mandatory." *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004). Failure to first provide the state court the opportunity to correct any constitutional errors constitutes a procedural default. *Id.* at 1026. Claims are also considered procedurally defaulted—and, therefore, not cognizable on federal habeas review— when they are denied by a state court "based on an adequate and independent state procedural rule." *Crutchfield v. Dennison*, 910 F.3d 968, 973 (7th Cir. 2018).

A petitioner may not pursue a procedurally defaulted claim under 28 U.S.C. § 2254 unless he can establish cause for the default and actual prejudice as a result of the alleged violation of federal law, or can demonstrate that the Court's failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Johnson v. Loftus*, 518 F.3d 453, 455–56 (7th Cir. 2008). Cause exists where "some objective factor external to the defense impeded [the petitioner's] efforts to comply with the State's procedural rule." *Strickler v. Greene*, 527 U.S. 263, 283 n.24 (1999) (internal quotation

marks and citation omitted). Prejudice exists where the petitioner shows that the violation of his federal rights "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Lewis*, 390 F.3d at 1026 (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)). The fundamental miscarriage of justice exception is "limited to situations where the constitutional violation has probably resulted in a conviction of one who is actually innocent." *Dellinger v. Bowen*, 301 F.3d 758, 767 (7th Cir. 2002). This requires new, reliable evidence of the petitioner's innocence in light of which "no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Woods v. Schwartz*, 589 F.3d 368, 377 (7th Cir. 2009) (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)).

I.   Sufficiency of the Evidence

First, Mr. Griggs contends that the evidence against him was insufficient to establish his guilt beyond a reasonable doubt. When reviewing a claim of insufficiency of the evidence under § 2254, this Court determines "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "[H]abeas reviews of *Jackson* claims are subject to two levels of judicial deference creating a high bar: first, the state appellate court determines whether any rational trier of fact could have found the evidence sufficient; second, a federal court may only overturn the appellate court's finding of sufficient evidence if it was objectively unreasonable." *Saxon v. Lashbrook*, 873 F.3d 982, 988 (7th Cir. 2017) (citing *Coleman v. Johnson*, 566 U.S. 650, 651 (2012)).

In Mr. Griggs' direct appeal, the Illinois Appellate Court identified the relevant question of whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, viewing the evidence in the light most favorable to the prosecution, citing the relevant Supreme Court authority, *Jackson*. *See Griggs*, 2015 IL App (2d) 130299-U, ¶ 39. Further, it reasonably applied the holding in *Jackson*. It noted the elements of Mr. Griggs' offenses as follows: (1) burglary to a motor vehicle is entering or remaining in a motor vehicle without authority with the intent to commit a felony or theft, *see* 720 ILCS 5/19-1, while theft is obtaining or exerting control over the property of the owner without authorization, *see* 720 ILCS 5/16-1(a)(1); and (2) possession of the credit card of another is the possession of another's credit card without the cardholder's consent with the intent to use it, *see* 720 ILCS 5/17-32(b). The appellate court then recounted the evidence that supported his convictions, including that Mr. "Steig did not give anyone permission to enter his car, the driver's side window of his car had been smashed, and his wallet was missing from the car. Steig discovered that his credit card had been used to purchase items at a Phillips station at the time he was at the fitness facility. The gas station attendant recognized defendant as the person who used the credit card, and surveillance footage showed defendant made the purchases with Steig's credit card. Steig's signature was not on the receipt used to purchase the items. The time stamp on the receipt verified that it was used during the time when Steig was at the fitness facility." *See Griggs*, 2015 IL App (2d) 130299-U, ¶ 43. The appellate court also recounted evidence that Mr. Steig did not give the defendant permission to use his credit card, and the nearly identical facts of the other crimes evidence. *Id.* ¶¶ 48, 53.

Mr. Griggs contends that the evidence was nevertheless insufficient because there was no direct evidence of him breaking into and entering Mr. Steig's car. Amended Petition [52] at 5. He also points to the lack of DNA evidence placing him at the scene of the crimes. *Id.* at 14-15. But "[c]ircumstantial evidence is of equal probative value to direct evidence. . . . Not only is the use of circumstantial evidence permissible, but circumstantial evidence may be the sole support for a conviction." *United States v. Reyes*, 270 F.3d 1158, 1169 (7th Cir. 2001) (internal quotation marks and citations omitted). Mr. Griggs also notes conflicting evidence. For instance, Mr. Griggs contends that during trial jurors watched video allegedly depicting him using Mr. Steig's credit card on the evening of December 6, 2011,; however, the video was date-stamped December 7, 2011 and Mr. Griggs testified that he visited the store almost every day. Reply [64] at 7-8. But Mr. Griggs raised the issue of the date stamp at trial, and Mr. Colburn testified that the video accurately depicted Mr. Griggs' use of Mr. Steig's credit card the evening of December 6, 2011, and that Mr. Griggs had never used a credit card before the transactions depicted in the video. Jurors have broad discretion to decide what inference to draw from the evidence presented at trial, *see Coleman* 566 U.S. at 655, and resolving conflicting evidence is within the province of jurors, not the court on habeas review, *see Chandler v. Richards*, 935 F.2d 915, 918 (7th Cir. 1991).

Given the evidence of the break-in to Mr. Steig's car, the theft of the credit card from the car, and the evidence that Mr. Griggs used that credit card at a nearby business just shortly after the break-in, plus evidence that Mr. Griggs participated in a nearly similar incident just a few nights later, a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found the essential elements of Mr. Griggs' offenses beyond a reasonable doubt. *Jackson*, 443 U.S. at 319. Accordingly, it was not objectively unreasonable for the state appellate court to reject his argument that the evidence did not support his conviction, and he has therefore failed to establish that he is entitled to habeas relief because of an insufficiency of the evidence of his guilt.

**II.     Admissibility of Video, Knife Blade, Sales Receipt**

Next, Mr. Griggs argues that the state court erred admitting into evidence the surveillance video of him at the Phillips 66 and Mobil gas stations, the knife blade found at the scene of the burglary, and the receipt for the purchase of beer and cigars using Mr. Steig's credit card. Mr. Griggs contends that the evidence was inadmissible because the video from the Phillips 66 station had the wrong date stamp, there was no evidence tying Mr. Griggs to the blood found at the Mobil station, there was no evidence tying the knife to either the burglary or Mr. Griggs, and there was no bank or credit card statement introduced into evidence showing that Mr. Steig's credit card was used at the Phillips 66 station or handwriting expert to testify that the signature on the receipt was Mr. Griggs'.

In its order affirming Mr. Griggs' conviction on direct appeal, the Illinois Appellate Court determined that while Mr. Griggs had identified the video, knife and receipt as issues in his amended brief, he presented no argument, and first presented his argument about those issues in his reply brief. *See Griggs*, 2015 IL App (2d) 130299-U, ¶ 68. It explicitly relied on Illinois Supreme Court Rule 341(h)(7), under which "[p]oints not argued are waived and shall not be raised in the reply brief, in oral argument, or on petition for rehearing." Waiver under Rule

341(h)(7) gave the appellate court an independent and adequate state procedural ground for denying Mr. Griggs claims about the video, knife and receipt. *See Campbell v. Lawrence*, No. 15 CV 8192, 2020 U.S. Dist. LEXIS 121401, at *17-19 (N.D. Ill. July 10, 2020) (petitioner procedurally defaulted ineffective assistance of counsel claim when he failed to raise it in his post-conviction appellate brief but raised it in a petition for rehearing). Mr. Griggs does not take issue with the state appellate court's determination that he did not raise his arguments about the video, knife and receipt in the amended brief in his direct appeal. Mr. Griggs' claims about this evidence are procedurally defaulted.

In any event, the Seventh Circuit has held that state evidentiary rulings are subject to habeas review only when the constitutional right to a fundamentally fair trial is in play, which requires the habeas petitioner to establish that the rulings probably caused a miscarriage of justice, which means the conviction of an innocent person. *See Dressler v. McCaughtry*, 238 F.3d 908, 914 (7th Cir. 2001); *Thompkins v. Cohen,* 965 F.2d 330, 333 (7th Cir.1992). Although Mr. Griggs has identified errors he contends occurred at trial, he has not set out evidence establishing his actual innocence. For this additional reason, he cannot obtain habeas relief based on his claims that the video, knife and receipt were improperly admitted as evidence.

### III. Effectiveness of Trial Counsel: DNA and Speedy Trial

Mr. Griggs contends that his trial counsel was ineffective because counsel's failure to object to DNA testing denied him a speedy trial in violation of Illinois' speedy trial statute, 725 ILCS 5/103-5, which requires that any defendant in custody be tried within 120 days of requesting a speedy trial. Mr. Griggs contends that he did not receive a trial within that 120 days, and the state was not entitled to the additional 120 days that 725 ILCS 5/103-5(c) allows for waiting for the results of DNA testing because the state did not exercise due diligence, but rather used DNA testing as a delay tactic. Reply [64] at 3-6.

Mr. Griggs raised a speedy trial claim based on a similar argument on direct appeal, and the state appellate court rejected his argument that any violation of the Illinois speedy trial statute had occurred. *See Griggs*, 2015 IL App (2d) 130299-U, ¶¶ 55-60. He couched the argument in terms of ineffective assistance of trial counsel in his post-conviction proceedings. Dkt. 62, Ex. N at 7-11. The appellate court reiterated its earlier conclusion that no speedy trial violation had occurred. *See Griggs*, No. 2-16-0826, slip. op. ¶ 7 (Ill. App. Ct. 2d Sept. 24, 2018). In particular, it noted that even if the 77-day delay occasioned by the DNA testing were attributable to the state, that only 105 of the allowed 120 days elapsed, and so the state did not violate Illinois' speedy trial statute. *Id.* Although the appellate court's decision did not explicitly address Mr. Griggs' claim in terms of ineffective assistance of counsel, a review of appointed counsel's motion to withdraw and Mr. Griggs' response to that motion makes clear that the basis of the state appellate court ruling was that counsel was not ineffective for causing a speedy trial violation because no speedy trial violation occurred. *See Woods v. Schwartz*, 589 F.3d 368, 375 (7th Cir. 2009) (on habeas review, a federal court can look to state court briefs including counsel's motion to withdraw to determine the basis of the state court's ruling).

When a petitioner's ineffective assistance of counsel claim turns on a violation of state law, it is "well-established that on habeas review, a federal court cannot disagree with a state

court's resolution of an issue of state law." *King v. Pfister*, 834 F.3d 808, 814 (7th Cir. 2016) (a state appellate court cannot have unreasonably applied clearly-established federal law where the state appellate court's decision was based on a resolution of state law). Given that the state court determined that no violation of the state speedy trial statute occurred, Mr. Griggs cannot establish that his trial counsel was ineffective by causing a violation.

### IV. Effectiveness of Appellate Counsel

Mr. Griggs argues that the appointed attorney in his direct appeal was ineffective for failing to raise all of the arguments Mr. Griggs asked him to, which Mr. Griggs contends "forced [him] to represent himself because of [counsel's] refusal to raise viable issue(s) in Mr. Griggs appeal." Amended Petition [52] at 21. In its order resolving his post-conviction appeal, the Illinois Appellate Court concluded that Mr. Griggs had procedurally defaulted that claim because he failed to raise it in his post-conviction petition. Instead, he identified it as an issue only in an affidavit attached to his post-conviction petition, and then first argued the issue in a reply filed in response to a motion to withdraw filed by his appointed counsel in his post-conviction appeal. *See People of the State of Ill. v. Griggs*, No. 2-16-0826, slip. op. ¶¶ 9-10 (Ill. App. Ct. 2d Sept. 24, 2018). In his reply brief, Mr. Griggs disputes that he failed to exhaust his claim of ineffective assistance of appellate counsel by noting that he "raised this issue on direct appeal when he petition[ed] the Supreme Court for leave to appeal." Reply Brief [64] at 16. But he has not disputed the appellate court's determination that he did not raise the issue in his post-conviction petition. Because he did not raise this argument "at each and every level in the state court system," this claim is also procedurally defaulted. *Lewis*, 390 F.3d at 1025.

### V. Admissibility of Other Crimes Evidence

Next, Mr. Griggs contends that evidence of other crimes, specifically the burglary and unauthorized use of Ms. Houzenga's credit card just a few nights after his offense, was improperly admitted at his trial. But as with the video, knife and receipt evidence, state evidentiary rulings are subject to habeas review only when the constitutional right to a fundamentally fair trial is implicated. *See Thompkins,* 965 F.2d 330 at 333 ("There is no federal constitutional right not to be questioned about prior crimes, whether or not one has been convicted of them or for that matter has committed them."). Again, Mr. Griggs has alleged errors at his trial, but has not offered evidence establishing his actual innocence, and therefore has not establish that he was denied a fair trial by the prosecution's use of the other crimes evidence.

### VI. Judge Knew Juror

Mr. Griggs contends he was denied a fair trial because his judge seated a juror without disclosing to him that the judge and juror were friends. In its decision resolving his post-conviction appeal, the Illinois Appellate Court determined that Mr. Griggs had failed to raise that claim during his direct appeal, and therefore procedurally defaulted it. *See Griggs*, No. 2-16-0826, slip. op. ¶ 68 (Ill. App. Ct. 2d Sept. 24, 2018). Mr. Griggs does not challenge the determination that he failed to raise the claim about his judge during his direct appeal. Accordingly, this claim is also procedurally defaulted. Although evidence of his actual

innocence could excuse the default, as mentioned above, he has not presented evidence establishing his actual innocence.

### VII.  Motion to Waive Exhaustion [73]

Finally, the Court addresses Mr. Griggs' "Motion to Waive the Exhaustion Requirement for a 2-1401 Petition." The motion seems to refer to 735 ILCS 5/2-1401, under which a party to a case in Illinois state court can file a petition to vacate a final order or judgment. He contends that the state circuit court finally ruled on his 5/2-1401 petition when it dismissed it on September 1, 2020, and he now finds "it impossible to appeal the lower courts final order due to deadline restrictions." Motion to Waive [73] at 2. In support of his motion he relies on *Montgomery v. Meloy*, 90 F.3d 1200, 1205 (7th Cir. 1996) for its proposition that "an inordinate delay in receiving a ruling on a [state petition for post-conviction relief] may constitute an exhaustion of state remedies, thereby allowing a petitioner to bring a federal claim for habeas corpus relief." But the respondent has not asserted that he failed to exhaust because his 5/2-1401 petition was still pending. Rather, his failures to exhaust occurred when he failed to raise arguments at each step of his direct appeal and post-conviction petition. Accordingly, his motion asking this Court to waive the requirement that he exhaust his claims in his state proceedings is denied.

## CONCLUSION

For the reasons given, Mr. Griggs' amended petition under 28 U.S.C. § 2254 [52] is denied.

Under Rule 11(a) of the Rules Governing § 2254 Cases, the Court must issue or deny a certificate of appealability when it enters a final order adverse to a petitioner. A habeas petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right. *See Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing 28 U.S.C. § 2253(c)(2)). To make a substantial showing, the petitioner must show that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)); *see Lavin v. Rednour*, 641 F.3d 830, 832 (7th Cir. 2011).

The Court's denial of Mr. Griggs' habeas petition relies on settled precedent, and its application of this precedent to the claims in his petition does not present difficult or close questions. Accordingly, the Court declines to issue a certificate of appealability.

Date:  December 20, 2021         By:  _____
                                      Iain D. Johnston
                                      United States District Judge